United States District Court
Southern District of Texas
**ENTERED**
September 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| GARRY BAKER, | § | CIVIL ACTION NUMBER |
| (TDCJ # 01961510) | § | 4:24-cv-03758 |
| Plaintiff, | § | |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| Defendants. | § | |

**OPINION AND ORDER ON MOTION TO DISMISS**

The motion to dismiss by Defendants Bryan Collier, Owen Murray, Tim Fitzpatrick, Dr. Samuel Adesoba, and Dr. Sangmin Kim is granted in part and denied in part. Dkt 25.

The motion is granted as to (i) the claims against all Defendants in their official capacity, (ii) all claims against Collier, Murray, and Fitzpatrick, and (iii) the claims against Adesoba and Kim for retaliation.

The motion is denied as to the claims against Adesoba and Kim in their individual capacity for deliberate indifference and punitive damages.

1. Background

Plaintiff is an inmate at the Jester 3 Unit of the Texas Department of Criminal Justice–Correctional Institutions Division. He proceeds here *pro se* and *in forma pauperis*.

He filed a complaint under 42 USC §1983, alleging that Defendants were violating his constitutional rights in connection with his treatment for an unspecified cancer. Dkt 1. He sues the former Executive Director of TDCJ (Collier), the Senior Vice President of Offender Health Services for University of Texas Medical Branch (Murray),

the Director of TDCJ's Classification and Inmate Transportation Division (Fitzpatrick), and two physicians at TDCJ's Jester 3 Unit (Adesoba and Kim). See TDCJ Divisions at www.tdcj.texas.gov, and UTMB Correctional Managed Care at www.utmb.edu.

Plaintiff alleges that he underwent chemotherapy at UTMB Galveston, with his last infusion being June 6, 2023. Dkt 1 at 4. At a September 2023 appointment, his treating doctors told him that they would be prescribing a new medication for him that would continue to treat the cancer. Ibid. Plaintiff was then transferred to TDCJ's Jester 3 Unit. Ibid.

Plaintiff asked about the new medication when he arrived at the Jester 3 Unit, but he was told that they "don't care what physicians in Galveston ordered." Ibid. Since that time, despite his requests, neither Adesoba nor Kim have ordered the medication that the Galveston physicians prescribed. Ibid. When Plaintiff asked the nursing staff about it, they responded only that they don't have any medication for him. Ibid.

Plaintiff alleges that Adesoba and Kim "removed" his cancer medication orders. Id at 8. He asserts that these two doctors supervise the nursing staff, who have repeatedly told him that they have no cancer medications for him and he should stop coming to the pill window asking for them. Id at 10. Since the nursing staff can't validly refuse to carry out physicians' orders, Plaintiff maintains that this shows that Adesoba and Kim have failed to order the medication prescribed by the Galveston physicians. Id at 10–11.

At an appointment with Adesoba in July 2024, Plaintiff specifically asked about the medication that his Galveston physicians had prescribed. Id at 17. Adesoba said he would set up an appointment for Plaintiff to return to Galveston, but that hasn't been done. Ibid. Plaintiff also requested a referral to a pain specialist, but Adesoba hasn't arranged that appointment either. Id at 18.

Plaintiff alleges that he has filed multiple sick-call requests seeking to have lab work done to check his blood

counts and to have his chemotherapy port removed, but he hasn't received a response. Id at 13. He alleges that the physicians in Galveston said he needed surgery, radiation, and additional chemotherapy, but appointments for these treatments have never been scheduled. Ibid.

Plaintiff alleges that he still needs treatment for his cancer, and Adesoba and Kim are acting with deliberate indifference to his need for treatment by failing to follow the treatment plan recommended by UTMB Galveston. Id at 8–9. He also alleges that Adesoba and Kim have refused to order reasonable interventions to provide relief from his chronic pain, which is severe enough to interfere with his daily activities. Id at 9, 12. Their refusal to provide these treatments endangers Plaintiff's health and puts him at a greater risk of death. Id at 9.

Plaintiff alleges that he filed Step 1 and Step 2 grievances about being denied the new medication. Id at 12. He also filed grievances asking to be returned to Galveston for treatment. Id at 11. In addition to filing grievances, he has written letters to Collier, Murray, and Fitzpatrick, seeking a transfer back to Galveston so he can be treated for his cancer. Id at 11. He hasn't received replies to his letters, and he contends that ignoring his pleas for help violates due process rights. Id at 12–13, 16.

In a copy of a letter attached to the complaint and addressed to Dr. Lannette Linthicum, the Director of TDCJ's Health Service Division, Plaintiff asserts that he has been denied the treatment that was ordered when he was at Galveston. Id at 23. He states that he was told in September 2023 that he was going to be prescribed medication for a period of time, followed by surgery, radiation, and then additional chemotherapy. Ibid. Since arriving at the Jester 3 Unit, he hasn't received the prescribed medication. Ibid. In addition, between September 2023 and July 2024, his chemotherapy port hasn't been flushed, putting him at risk for blood clots. Ibid. He maintains that he has been provided with treatment for other medical conditions, but not for his cancer. Ibid.

In addition to his claims for deliberate indifference and due process, Plaintiff alleges that TDCJ officials at the Jester 3 Unit have retaliated against him by removing him from an air-conditioned unit, placing him in lock-up for no reason, and taking away dietary supplements that were recommended by physicians in Galveston. Id at 11–12. He doesn't specify which TDCJ officials took these actions or why they would seek to retaliate against him.

As relief, Plaintiff seeks both compensatory and punitive damages. Id at 4, 14. He also seeks injunctive relief in the form of an order to transfer him to a unit where he could receive treatment at MD Anderson Cancer Center. Id at 13.

Defendants responded to the complaint with a motion to dismiss. Dkt 25. They contend that (i) any claims against them in their official capacities are barred by the Eleventh Amendment, (ii) the requested injunctive relief is unavailable, (iii) the complaint doesn't otherwise allege sufficient facts to state a claim against any Defendant, and (iv) they are protected from liability by qualified immunity. Id at 3–16.

Plaintiff filed a response. Dkt 32. He reasserts that (i) he has personally seen Adesoba and Kim, (ii) they know about his cancer and the treatment that was prescribed, and (ii) they have failed to order the medication or otherwise treat his cancer. Id at 1–2. He points out that Kim recently told him that his cancer, which has been untreated since June 2023, has now spread to his lungs. Id at 2. He clarifies that he isn't contending that the non-party nurses did anything wrong. Id at 9. Instead, their refusals to provide him with the cancer medication are evidence that Adesoba and Kim either didn't prescribe it despite the order by the UTMB physicians or ordered the nurses not to give it to him. Id at 9.

Defendants on reply contend that any allegations by Plaintiff contained for the first time in his response aren't properly considered. Dkt 33 at 3. They maintain that the complaint fails to state a claim against any of them. Plaintiff filed a sur-reply on this point. Dkt 34.

2. Legal standard

Plaintiff's complaint is construed liberally because he proceeds *pro se*. *Coleman v United States*, 912 F3d 824, 828 (5th Cir 2019), citing *Erickson v Pardus*, 551 US 89, 94 (2007, *per curiam*).

To state a valid claim under §1983, a plaintiff must (i) allege a violation of rights secured by the Constitution or laws of the United States, and (ii) demonstrate that the alleged violation was committed by a person acting under color of state law. *West v Atkins,* 487 US 42, 48 (1988); *Gomez v Galman*, 18 F4th 769, 775 (5th Cir 2021, *per curiam*). The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§]1983 must show deprivation of a federal right." *Nesmith v Taylor,* 715 F2d 194, 195 (5th Cir 1983, *per curiam*). The second element means that generally only state actors—not private parties—can be liable for violations of civil rights. *Frazier v Board of Trustees of Northwest Mississippi Regional Medical Center*, 765 F2d 1278, 1283 (5th Cir 1985).

3. Discussion

It isn't clear from the complaint whether Plaintiff sues Defendants in their official capacities, their individual capacities, or both. Defendants maintain that all of the claims are subject to dismissal, regardless of capacity.

a. Official capacity claims

Dismissal of a complaint is appropriate "'when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association of Mississippi, Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998). Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek such dismissal. Once jurisdiction is at issue, the party asserting it has the burden to establish it by a preponderance of the evidence. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008); see also *Ramming v United States*,

281 F3d 158, 161 (5th Cir 2001, *per curiam*): "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."

Defendants first contend under Rule 12(b)(1) that the claims against them in their official capacities should be dismissed as barred by the Eleventh Amendment.

i. Claims for damages

The Eleventh Amendment bars suits for damages against a state in federal court. *Kentucky v Graham*, 473 US 159, 169 (1985). This bar also applies to state officials sued for damages in their official capacity because such actions "generally represent only another way of pleading an action against an entity of which an officer is an agent." Id at 165, quoting *Monell v New York City Department of Social Services*, 436 US 658, 690 n 55 (1978).

TDCJ is an arm of the State of Texas and so is immune from claims for damages in federal court under the Eleventh Amendment. *Valentine v Collier*, 993 F3d 270, 280 (5th Cir 2021). Likewise, actions against Texas state officials in their official capacity are treated as actions against the state and are barred by the Eleventh Amendment. *Hafer v Melo*, 502 US 21, 25 (1991). This means that the claims for damages against Defendants in their official capacities can't proceed in federal court.

The motion by Defendants to dismiss under Rule 12(b)(1) will be granted as to Plaintiff's claims against them in their official capacity for money damages. Dkt 25. Such claims will be dismissed without prejudice for lack of subject-matter jurisdiction.

ii. Claims for injunctive relief

The Eleventh Amendment also bars claims against state officials for injunctive relief when the claims are based on past actions and past violations of federal law. See *Green v Mansour*, 474 US 64, 68 (1985), citing *Ex parte Young*, 209 US 123 (1908). But *Ex parte Young* creates an exception for an official-capacity claim that "seeks injunctive relief for an ongoing violation of federal law" when the defendant "bears a sufficiently close connection

to the unlawful conduct" that an injunction directed to that defendant would redress the violation. *Freedom From Religion Foundation, Inc v Mack*, 4 F4th 306, 311–12 (5th Cir 2021).

To determine whether an *ongoing violation* exists, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc v Public Service Commission of Maryland*, 535 US 635, 645 (2002), quoting *Idaho v Coeur d'Alene Tribe of Idaho*, 521 US 261, 296 (1997).

To determine whether *redressability* exists, the question is whether the state official has "some connection to the state law's enforcement." *Texas Democratic Party v Abbott*, 961 F3d 389, 400 (5th Cir 2020) (cleaned up). It isn't enough that the official has a "general duty to see that the laws of the state are implemented." *Morris v Livingston*, 739 F3d 740, 746 (5th Cir 2014). If the official being sued isn't "statutorily tasked with enforcing the challenged law," then the necessary connection is absent and "our *Young* analysis ends." *City of Austin v Paxton*, 943 F3d 993, 998 (5th Cir 2019); see also *K.P. v LeBlanc*, 627 F3d 115, 124 (5th Cir 2010) (cleaned up): "A plaintiff must show that the defendant state actors have the requisite 'connection' to the statutory scheme to remove the Eleventh Amendment barrier to suits brought in federal court against the State."

Claims for prospective injunctive relief are subject to an additional limitation in cases involving prison conditions. In those cases, any injunction must be "narrowly drawn," must extend "no further than necessary to correct the violation," and must be "the least intrusive means necessary to correct the violation." 18 USC §3626(a)(1)(A).

Plaintiff's claim for prospective injunctive relief seeks an order requiring Defendants to arrange for him to be treated at the MD Anderson Cancer Center. Defendants contend that they have no authority to authorize such an

arrangement. Plaintiff responds that he is aware of other TDCJ inmates who have been treated at MD Anderson facilities. Dkt 32 at 7.

Even taking Plaintiff's allegations as true, he doesn't allege facts showing that any of the named Defendants are statutorily tasked with determining housing assignments for prisoners with medical needs or arranging for medical care outside of TDCJ. Further, the facts alleged don't show that an injunction requiring treatment at MD Anderson Cancer Center is the least intrusive means necessary to correct the violation. Plaintiff was previously receiving cancer care and treatment at the UTMB facility in Galveston. He raised no complaints about that care in his complaint. He instead complains that the Jester 3 Unit physicians are refusing to comply with the UTMB treatment plan. Plaintiff doesn't show that an injunction requiring treatment at a non-TDCJ facility is the least intrusive means necessary to correct the violations he alleges or that an injunction directed to Defendants could accomplish that goal. He thus isn't entitled to the prospective injunctive relief that he seeks.

The motion by Defendants to dismiss under Rule 12(b)(1) will be granted as to Plaintiff's claims for prospective injunctive relief. Dkt 25. Such claims will be dismissed without prejudice for lack of subject-matter jurisdiction.

b. Individual capacity claims

Defendants maintain that Plaintiff's claims against each of them in their individual capacity fail to state a claim upon which relief can be granted.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Reading these Rules together, the Supreme Court has held that Rule 8 "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 US at 678, quoting *Twombly*, 550 US at 556.

Review of a motion to dismiss under Rule 12(b)(6) is constrained, being generally limited to the contents of the complaint and its attachments. *Collins v Morgan Stanley Dean Witter*, 224 F3d 496, 498 (5th Cir 2000). The reviewing court "must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019), quoting *Campbell v Wells Fargo Bank, NA*, 781 F2d 440, 442 (5th Cir 1986) (cleaned up). But courts "do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Rx Solutions, Incorporated v Caremark, LLC,* 164 F4th 436, 441 (5th Cir 2026), quoting *Hodge v Engleman,* 90 F4th 840, 843 (5th Cir 2024) (cleaned up).

While *pro se* litigants are held to less stringent pleading standards than attorneys, they aren't excused from the requirement to allege sufficient facts to state a plausible claim. See *Taylor v Books A Million, Inc*, 296 F3d 376, 378 (5th Cir 2002); *Toole v Peak*, 361 F Appx 621, 621

(5th Cir 2010, *per curiam*) (self-represented litigants "still must actually argue something that is susceptible of liberal construction").

i. Supervisory liability claim

Plaintiff alleges that Collier is liable for all of the violations of his constitutional rights because he is "legally responsible for the overall operation of TDCJ," including the Jester Unit. Dkt 1 at 7.

Under §1983, supervisory officials aren't responsible for the actions of their subordinates on a theory of either vicarious liability or *respondeat superior*. *Hicks v LeBlanc*, 81 F4th 497, 504 (5th Cir 2023), quoting *Thompkins v Belt*, 828 F2d 298, 303 (5th Cir 1987). Plaintiff thus can't hold Collier liable based solely on actions taken or not taken by his subordinates.

But supervisors can be held liable for their own actions. See *Alton v Texas A&M University*, 168 F3d 196, 200 (5th Cir 1999). To state a claim against a supervisor under §1983, the plaintiff must allege facts showing either (i) the supervisor's personal involvement in a constitutional deprivation and a causal connection between the supervisor's wrongful conduct and the deprivation, or (ii) the supervisor's decision to implement an official policy that resulted in a violation of the plaintiff's constitutional rights. See *Thompkins,* 828 F2d at 304; see also *Gates v Texas Department of Protective and Regulatory Services*, 537 F3d 404, 435 (5th Cir 2008).

An *official policy* includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v Thompson*, 563 US 51, 61 (2011). Liability attaches when "supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins,* 828 F2d at 304, quoting *Grandstaff v City of Borger*, 767 F2d 161, 169, 170 (5th Cir 1985) (cleaned up).

This standard requires more than bare assertion. As framed by the Fifth Circuit, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v City of Rio Grande City*, 879 F3d 613, 622 (5th Cir 2018), quoting *Spiller v City of Texas City, Police Department,* 130 F3d 162, 167 (5th Cir 1997).

In addition, the plaintiff must allege facts showing that the supervisory official implemented the policy with deliberate indifference to the likelihood of constitutional violations. See *Porter v Epps*, 659 F3d 440, 446 (5th Cir 2011). *Deliberate indifference* is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 446–47, quoting *Connick*, 563 US at 61. The allegations necessary to show a supervisor's deliberate indifference generally must include at least a pattern of similar violations. *Rios v City of Del Rio, Texas,* 444 F3d 417, 427 (5th Cir 2006), quoting *Johnson v Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F3d 293, 309 (5th Cir 2004).

Plaintiff doesn't allege facts showing that Collier had any personal involvement with the events described in his complaint. Indeed, he doesn't allege facts showing that Collier was even aware of the alleged problems with his treatment or medications. Plaintiff points to the grievances he filed, but those grievances were filed with jail officials, not Collier. They are insufficient to show that Collier personally knew of the alleged violations of Plaintiff's rights. See *Blackmon v Kukua*, 758 F Supp 2d 398, 411 (SD Tex 2010), citing *Kidd v Livingston*, 2010 WL 2208247, *3 (ED Tex) (filing grievances with prison unit wasn't sufficient to put executive director on notice of alleged violations). Plaintiff also alleges that he wrote letters addressed to Collier complaining about the lack of medical care. But the "failure to respond to a letter or grievance does not rise to the required level of personal involvement

for liability." *Reagan v Burns*, 2019 WL 6733023, *8 (ND Tex).

Plaintiff also doesn't allege facts showing that Collier implemented a deficient policy that was the moving force behind the alleged violations of Plaintiff's rights. He identifies no specific policy implemented by Collier that caused the alleged violations. He includes no allegations of prior similar incidents that might show a custom or practice adopted or endorsed by Collier. And he alleges no facts showing a pattern of similar incidents sufficient to establish that Collier responded with deliberate indifference to the likelihood of further violations. *Reagan*, 2019 WL 6733023, at *8 (courts will impute to supervisory officials knowledge necessary to support finding of deliberate indifference only when "there is evidence of a history of widespread abuse"). He thus fails to state a claim of supervisory liability upon which relief can be granted against Collier.

The motion to dismiss by Defendant Collier will be granted. Dkt 25. Plaintiff's claims against Collier will be dismissed with prejudice for failing to state a claim.

ii. Due process claims

Plaintiff alleges that Defendants Murray and Fitzpatrick failed to respond to letters he mailed them about his lack of medical treatment, and he contends that these failures violate his due process rights. Dkt 1 at 11–13, 16. The complaint contains no other allegations against them. They maintain that these allegations fail to state a claim against them.

The Fifth Circuit holds that prisoners don't have a constitutionally protected liberty interest in having grievances or complaints resolved to their satisfaction. *Geiger v Jowers*, 404 F3d 371, 373–74 (5th Cir 2005). Absent such a constitutionally protected interest, an "allegation that a government defendant merely failed to respond to a letter, without more is not sufficient to support a claim for a violation of constitutional rights." *Morris v Combs*, 2013 WL 5595962, *4 (ND Tex); see also *Johnson v*

*Johnson*, 385 F3d 503, 526 (5th Cir 2004) (noting that TDCJ executives "cannot be expected to intervene personally in response to every inmate letter they receive"); *Bailey v Albright*, 2024 WL 5237649, *5 (WD Tex): "Certainly, there is no constitutional right requiring that state or federal officials respond to letters." Such an allegation also isn't sufficient to show personal involvement in a constitutional violation by the intended recipient. See *Hubbard v Dallas County Sheriff's Department Jail Staff*, 2020 WL 2842685, *4 (ND Tex), citing *Amir-Sharif v Valdez*, 2007 WL 1791266, *2 (ND Tex).

The complaint doesn't allege facts showing that either Murray or Fitzpatrick were personally involved in violating Plaintiff's constitutional rights. Their alleged failures to respond to his letters, standing alone, don't rise to the level of a constitutional violation. Plaintiff thus fails to state a claim upon which relief can be granted against either of these defendants.

The motion to dismiss by Defendants Murray and Fitzpatrick as to Plaintiff's due process claims will be granted. Dkt 25. Plaintiff's due process claims against Murray and Fitzpatrick will be dismissed with prejudice for failing to state a claim.

iii. Retaliation claims

Plaintiff alleges that unnamed TDCJ officials retaliated against him by transferring him out of an air-conditioned dorm, placing him in lock down for no reason, and refusing to provide him with certain dietary supplements previously prescribed by Galveston physicians. Defendants maintain that these allegations fail to state a claim for retaliation against any of them.

A *prima facie* case of retaliation in the prison context requires the plaintiff to show that (i) he exercised a specific constitutional right, (ii) the defendant intended to retaliate against him for the exercise of that right, (iii) the defendant took a retaliatory adverse action, and (iv) the plaintiff's exercise of the constitutional right caused the retaliatory

adverse action. *Johnson v Rodriguez*, 110 F3d 299, 310 (5th Cir 1997). The alleged adverse acts must be sufficiently serious to rise to the level of a constitutional violation. *Morris v Powell*, 449 F3d 682, 684–85 (5th Cir 2006). And to show *causation*, the plaintiff must either "produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Woods v Smith*, 60 F3d 1161, 1166 (5th Cir 1995), quoting *Cain v Lane*, 857 F2d 1139, 1143 n 6 (7th Cir 1988). "Mere conclusory allegations of retaliation" aren't sufficient. Ibid. Neither is the plaintiff's personal belief that he's the victim of retaliation. *Johnson*, 110 F3d at 310.

The complaint by Plaintiff alleges no facts sufficient to meet this standard. He doesn't identify a specific constitutional right that he exercised. He doesn't identify which Defendants knew of his exercise of that unidentified right and intended to retaliate against him for exercising it. He alleges no facts to show that any alleged discipline or housing transfers were the result of retaliation rather than routine prison administrative needs. And he offers no chronology of events from which a retaliatory motive could plausibly be inferred.

The motion by Defendants to dismiss the retaliation claims will be granted. Plaintiff's claims for retaliation will be dismissed with prejudice for failing to state a claim.

iv. Deliberate indifference claims

Plaintiff alleges that Adesoba and Kim violated his Eighth Amendment rights by acting with deliberate indifference to his need for treatment for his cancer. They contend that the complaint doesn't allege sufficient facts to state a claim for deliberate indifference.

The Eighth Amendment's prohibition against cruel and unusual punishment guarantees prisoners the right to have their serious medical needs addressed. See *Gobert v Caldwell*, 463 F3d 339, 345 (5th Cir 2006). A *serious medical need* is one "for which treatment has been recommended or for which the need is so apparent that

even laymen would recognize that care is required." Id at 345 n 12. Prison officials violate the Eighth Amendment when they evince *deliberate indifference* to a prisoner's serious medical needs, resulting in the unnecessary and wanton infliction of pain. *Wilson v Seiter*, 501 US 294, 297 (1991). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v Gamble*, 429 US 97, 104–05 (1976) (cleaned up).

But the standard for *deliberate indifference* is "extremely high." *Domino v Texas Department of Criminal Justice*, 239 F3d 752, 756 (5th Cir 2001). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v Brenoettsy*, 158 F3d 908, 912 (5th Cir 1998), quoting *Farmer v Brennan*, 511 US 825, 837 (1994). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent" don't amount to deliberate indifference. *Doe v Dallas Independent School District*, 153 F3d 211, 219 (5th Cir 1998); see also *Farmer*, 511 US at 835. Neither do "[u]nsuccessful medical treatment, acts of negligence, . . . medical malpractice" or "a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F3d at 346. The plaintiff must instead allege facts showing that the defendant, despite knowing of the risk or condition, "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F3d at 756, quoting *Johnson v Treen*, 759 F2d 1236, 1238 (5th Cir 1985).

Plaintiff's allegations are sufficient to satisfy this extremely high standard. He alleges that Adesoba and Kim were each aware that he was a cancer patient who had just finished chemotherapy. He alleges that his treating

physicians at UTMB Galveston developed a treatment plan that included a medication as continued treatment. Despite knowing of this treatment plan and despite Plaintiff's requests, he alleges that Adesoba and Kim failed or refused to order the medication. As a result, Plaintiff states that he has received no treatment for his cancer since he arrived at the Jester 3 Unit in September 2023. He has also not received routine maintenance care for his chemotherapy port, and his requests for treatment for the pain from his cancer have been ignored.

These allegations must be taken as true at this stage of the proceedings. They are sufficient to establish or plausibly infer that Adesoba and Kim refused to treat him, ignored his complaints, intentionally treated him incorrectly, and evinced a wanton disregard for his serious medical needs. Plaintiff thus states a claim against them for deliberate indifference.

Argument to the contrary arises from a misreading of Plaintiff's complaint. Adesoba and Kim maintain in their motion that the complaint doesn't allege facts showing their personal involvement and instead alleges only that the non-party nurses they supervise refused to provide him with medication. Dkt 25 at 7–8, 10. But as clarified in Plaintiff's response, his complaint isn't that the non-party nurses *would* not hand him prescribed medications. Dkt 32 at 7–11. It is instead that the non-party nurses *could* not do so because Adesoba and Kim refused to order it. Id at 9–11. This accords with allegations and plausible inferences derived from his pleadings. See Dkt 1 at 3, 8–9, 12, 17, 19.

Also ignored are Plaintiff's allegations concerning the refusal to order either the removal or proper maintenance of his chemotherapy port and their refusal to either prescribe pain medication or refer him for pain management. Id at 12–13, 17, 19, 23. These allegations—when assumed (as they must be here) as true—are

sufficient to state a claim for deliberate indifference against Adesoba and Kim.

The motion by Adesoba and Kim to dismiss the deliberate indifference claims against them will be denied. Dkt 25.

v. Punitive damages claims

Plaintiff's complaint seeks punitive damages as well as compensatory damages. Defendants contend that the allegations don't support a claim for such damages.

An award of punitive damages is appropriate only "when the defendant's conduct 'is motivated by evil intent' *or* demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Williams v Kaufman County*, 352 F3d 994, 1015 (5th Cir 2003) (emphasis in original), quoting *Sockwell v Phelps*, 20 F3d 187, 192 (5th Cir 1994). "The latter standard requires 'recklessness in its subjective form,' i.e., 'a subjective consciousness of a risk of injury or illegality and criminal indifference to civil obligations.'" Ibid, quoting *Kolstad v American Dental Association*, 527 US 526, 536 (1999) (cleaned up).

As explained above, Plaintiff's allegations (when taken as true) state that Adesoba and Kim were aware of his cancer diagnosis and knew of the treatment plan developed by his treating physicians at UTMB, but they nevertheless deliberately refused to prescribe the new medication or any other treatment for his cancer. As a result, his cancer has now spread to his lungs. Plaintiff also alleges that they were aware that he had a chemotherapy port but refused to arrange for it to be either removed or properly flushed as required to prevent blood clots. He also alleges that they were aware that he suffers severe pain as a result of the cancer, but they have refused to provide either pain medication or a referral for pain management.

Such allegations, if proven, would reflect a reckless or callous indifference to Plaintiff's constitutional right to receive adequate health care for his serious medical needs.

As such, the allegations are sufficient to state a claim for punitive damages.

The motion by Adesoba and Kim to dismiss Plaintiff's claim for punitive damages will be denied. Dkt 25.

c. Qualified immunity defense

Defendants also raise the affirmative defense of qualified immunity. This defense protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231 (2009), quoting *Harlow v Fitzgerald*, 457 US 800, 818 (1982). Its availability as a defense ultimately "turns only upon the *objective* reasonableness of the defendant's acts." *Thompson v Upshur County, Texas*, 245 F3d 447, 457 (5th Cir 2001) (emphasis in original).

Analysis of qualified immunity involves two inquiries. See *Aguirre v City of San Antonio*, 995 F3d 395, 406 (5th Cir 2021). A court "first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." Ibid, quoting *Tolan v Cotton*, 572 US 650, 655–56 (2014, *per curiam*). Second, it determines whether the "right in question was 'clearly established' at the time of the violation." *Tolan*, 572 US at 656, citing *Hope v Pelzer*, 536 US 730, 739 (2002). "'The salient question is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged conduct was unconstitutional." Ibid, quoting *Hope*, 536 US at 741 (cleaned up).

When qualified immunity is raised as a basis for dismissal in a Rule 12(b)(6) motion, the question is whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense." *Backe v LeBlanc*, 691 F3d 645, 648 (5th Cir 2012), quoting *Wicks v Mississippi State Employment Services*, 41 F3d 991, 994 (5th Cir 1995). "[A]n assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint

to a heightened pleading standard." *Arnold v Williams,* 979 F3d 262, 266–67 (5th Cir 2020), citing *Anderson v Valdez*, 845 F3d 580, 590 (5th Cir 2016). Instead, "claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims." Id at 267.

To overcome a qualified-immunity defense raised in a motion to dismiss, the complaint must thus allege facts tending to show that (i) the defendants violated the plaintiff's constitutional rights, and (ii) the defendant's actions were objectively unreasonable in light of clearly established law. *See Alexander v Eeds*, 392 F3d 138, 144 (5th Cir 2004), citing *Hernandez v Texas Department of Protective and Regulatory Services*, 380 F3d 872, 879 (5th Cir 2004).

As pertinent here, the law has been clearly established since at least 1976 that prison officials have an obligation under the Eighth Amendment to provide necessary medical care to inmates. *See Estelle*, 429 US at 103. Plaintiff alleges that Adesoba and Kim have each denied him any care and treatment for his cancer, his pain, and the related care of his chemotherapy port. The outright denial of medical care for cancer treatment and medical follow-up—as alleged in Plaintiff's complaint—is an objectively unreasonable response to what may be characterized without doubt as serious medical needs. Plaintiff's factual allegations are thus sufficient to defeat a qualified immunity defense at this stage of the proceedings.

The motion to dismiss by Adesoba and Kim on the basis of qualified immunity will be denied, without prejudice to them raising the issue in a motion for summary judgment if appropriate. Dkt 25.

4. Conclusion

The motion to dismiss by Defendants is GRANTED IN PART and DENIED IN PART. Dkt 25.

The motion is GRANTED as to the claims stated against all Defendants in their official capacity. All such claims are DISMISSED WITHOUT PREJUDICE.

The motion is also GRANTED as to the claims stated against Defendants Bryan Collier, Owen Murray, and Tim Fitzpatrick in their individual capacity. All such claims are DISMISSED WITH PREJUDICE.

The motion is also GRANTED as to the claim stated against Defendants Samuel Adesoba and Sangmin Kim for retaliation. That claim is DISMISSED WITH PREJUDICE.

The motion is DENIED as to the claim stated against Defendants Samuel Adesoba and Sangmin Kim for deliberate indifference.

The motion is also DENIED as to the claim for punitive damages as against Defendants Samuel Adesoba and Sangmin Kim.

Dr. Adesoba and Dr. Kim are further ORDERED, by October 23, 2026, to (i) file their answer to the remaining claims of Plaintiff's complaint, and (ii) provide initial disclosures to Plaintiff.

Any further dispositive motions must be filed by January 15, 2027, absent reasonable extension upon request.

The motions "of objection" and "to oppose" by Plaintiff Garry Baker are DENIED AS MOOT. Dkts 30 & 34.

SO ORDERED.

Signed on September 28, 2026, at Houston, Texas.

Honorable Charles Eskridge
United States District Judge